Howard R. Chase, Jr. *vs.* United States Fidelity & Guaranty Company.

Donald I. Harding *vs.* Same.

JUNE 20, 1947.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

See also 71 R. I. 81.

Condon, J. These are actions on the case against an insurance company and were brought pursuant to general laws

1938, chapter 155. The plaintiff in each case holds a judgment on which an execution has been returned unsatisfied against John H. McKenzie for personal injuries suffered by each plaintiff by reason of McKenzie's negligent operation of an automobile owned by Thomas P. Carr, the named insured in a liability insurance policy issued by the defendant. Each plaintiff based his right of action against defendant on a provision of the policy which extended coverage to any person while actually using the named insured's automobile with his permission. Whether such permission had been given was the main issue at the trial.

The cases were tried together before a justice of the superior court sitting with a jury and resulted in a verdict for the defendant in each case. Thereafter each plaintiff filed a motion for a new trial which was denied, and thereupon each duly prosecuted a bill of exceptions to this court. Each bill contains identical exceptions to those denials, to rulings of the trial justice on the admission and exclusion of evidence, and to submission to the jury of defendant's request for a special finding. However, it seems to us that the underlying reason of each exception raises the question whether, in the circumstances, and within the meaning of the policy, Carr permitted his automobile to be used by McKenzie at the time of the accident. The exceptions may, therefore, be considered as related and will be treated together.

The undisputed facts out of which the plaintiffs' causes of action arise are substantially as follows. On November 10, 1941, Thomas P. Carr parked his locked automobile in an alley, which extends from Westminster street to Exchange Place in the city of Providence, in this state, and took his keys with him to his place of employment near by. The alley is wide enough to accommodate only one automobile. At the time he parked, there were other automobiles in the alley parked in front of his automobile, which he had parked facing Exchange Place. Shortly after noon, or about 1 p.m., Stephen J. Femino, the janitor of the building on the west

side of the alley, whose automobile was parked immediately in front of Carr's, obtained from Carr his keys so that he, Femino, could have Carr's automobile moved from in back of his automobile to enable Femino to drive his own automobile out of the alley.

Femino gave the keys to Anthony DiLisa, a young man employed in the same building as Femino, and requested him to drive Carr's automobile out of the alley into Westminster street, which he did. Then, after Femino had driven his automobile out, DiLisa drove Carr's back in the alley and left the keys in the automobile. DiLisa did not know Carr, but assumed that, as it was so close to lunch time, he would soon come for his automobile. Carr did not come for the automobile and he did not inquire why Femino had not brought or sent back the keys to him. About 4:30 or 5 o'clock that afternoon he learned, through the police department, that his automobile had been involved in an accident on Weybosset street. That was the first knowledge he received that his automobile was not parked in the alley.

John H. McKenzie, a seventeen-year-old Western Union delivery boy, who was employed in the same place as DiLisa, had driven Carr's automobile out of the alley sometime that afternoon in order, as he testified by deposition, that another automobile could be driven out of the alley. He further testified that DiLisa had obtained Carr's keys for that purpose and gave them to him, but this is denied by DiLisa. McKenzie testified that after driving Carr's automobile from the alley into Westminster street it was necessary, because of traffic conditions on that street, for him to drive west on Westminster street to Orange street and then to Weybosset street. While driving along that street he became involved in the accident which is the cause of this litigation.

It is apparent from the undisputed testimony that anyone parking his automobile in the alley as Carr did on the day in question would naturally expect that he might be required to move it or permit someone else to move it in

order that other automobiles could be driven from the alley. It is equally apparent from such testimony that Carr intended to and did give Femino permission to move his, Carr's, automobile or to have someone else move it so that he, Femino, could drive his own automobile out of the alley. When Femino selected DiLisa for this purpose, DiLisa had Carr's implied permission to drive his automobile, at least to enable Femino to drive out of the alley, even though Carr did not know DiLisa or did not know that he was to assist Femino. It is by no means apparent that Carr's delivery of his keys to Femino was intended to extend any further. As we understand the respective contentions of the parties, however, the real question here is whether McKenzie had the same implied permission that DiLisa had when later that same day McKenzie obtained the keys either from DiLisa or someone else, but not from Carr, and drove Carr's automobile from the alley and into Weybosset street, where the accident occurred.

Plaintiffs contend that he did. They base their contention on the circumstances in which automobiles were parked in the alley and more specifically on Carr's knowledge of such circumstances and his conduct in giving Femino the keys to his automobile without further concerning himself about his failure to return them and without inquiring for the rest of the day where they were. By such conduct plaintiffs claim substantially that Carr not only gave DiLisa implied permission to use his, Carr's, automobile, but that he also impliedly gave to others the same permission whenever it became necessary to move his automobile out of the alley, in order that other cars might be driven out. Plaintiffs further contend that McKenzie obtained Carr's keys, whether from DiLisa or someone else it makes no difference, for just that purpose, and, therefore, that he had Carr's implied permission to drive his automobile, notwithstanding that Carr neither knew him nor knew that he had obtained the keys.

The question whether McKenzie had Carr's permis-

sion resulted in the plaintiffs taking exceptions to several rulings of the trial justice allowing Carr and McKenzie, as witnesses, to be interrogated by defendant's counsel as follows. Carr was asked: "Did you on the 9th or 10th day of November, whichever day it was, give your permission to Mr. McKenzie to operate your automobile?" He answered: "I didn't." Later on in the trial when McKenzie's deposition was being read into the record by counsel for the plaintiffs, McKenzie being in the military service at the time of the trial, the following question which had been asked by defendant and objected to by plaintiffs was allowed: "Mr. McKenzie, you didn't secure the permission of Mr. Thomas P. Carr to operate or move his machine on the day of the accident?" His answer was: "He give permission to the other fellow." To another question as to whether Carr gave him permission, he answered: "No, he didn't." Carr was recalled as a witness for defendant and was asked: "Had you given any permission to John McKenzie, this seventeen-year-old Western Union delivery boy, to move your automobile on the date of the accident?" He answered: "No, sir." Those questions and answers are the subjects respectively of plaintiffs' exceptions numbered 1, 4, 5 and 7.

Plaintiffs contend that such evidence was erroneously admitted, because each question was designed to elicit from the witness not a fact but a conclusion, namely, whether McKenzie had the implied permission of Carr to use his automobile, which plaintiff claimed was the very issue to be determined by the jury, under proper instructions by the trial justice. Upon a superficial reading of the questions this might seem to be so, but a more careful consideration of them will, we think, show that each question, by its very phrasing, can only refer to express permission directly given by Carr.

Defendant had a right to interrogate, as it did, on that phase of the cases. Express permission as well as implied permission was in issue under the pleadings. Plaintiffs' dec-

larations on that point simply alleged that "said John McKenzie was then and there operating said automobile with the permission of said Thomas P. Carr upon and along Weybosset Street . . . ." Had the plaintiffs' declarations narrowly confined the issue solely to implied permission, there might be merit in their contentions. True, in the hearing before us they relied solely on implied permission, but, in considering their exceptions, we must view the cases on the issues that were open at the trial in the superior court.

However, plaintiffs nevertheless contend that such evidence was prejudicial because it tended to confuse the jury, in the absence of express instructions by the trial justice as to what constituted implied permission. We think that contention is also lacking in merit. If there was danger of such confusion, plaintiffs had the right to have the trial justice clarify it in his charge so that the jury would not be misled as to the purport of the testimony on the question of implied permission. The record fails to show that they made any request for such a charge, nor did they except to the charge as given. In the circumstances, we find no error in the admission of such evidence and plaintiffs' exceptions 1, 4, 5 and 7 are overruled.

At the conclusion of the evidence defendant requested the trial justice to submit to the jury for a special verdict the following question: "Did John McKenzie, the 17-year-old Western Union boy, have the permission of Thomas P. Carr to use the automobile of Thomas P. Carr on the date of the accident involving Howard R. Chase, Jr. and Donald I. Harding on, to wit, the tenth day of November, 1941?" Over the plaintiffs' objection, that request was granted and the jury answered "No", in addition to their general verdict. The ruling of the trial justice was in accord with G. L. 1938, chap. 534, §2. Plaintiffs contend in support of their eighth exception to that ruling much as they did in support of their exceptions to the rulings on the admission of evidence. They argued that, in the circumstances of these cases, such a request tended to confuse the jury,

inasmuch as it did not specifically request them to find simply whether or not there was "implied permission".

Perhaps it would have been more helpful if the request had been so framed, but we cannot say that it was error to submit it as requested. After all, the jury had before them evidence on which it was necessary for them to find whether either kind of permission had been given. And on the whole we think that the jury were no more confused by this request than they were by the evidence which plaintiff objected to and which we considered above. Moreover, we think that the trial justice sufficiently warned them against such confusion when he instructed them in his charge: "Now, in answering that question and also in adjudicating this case, you come to what is the most important phase of this case, presented by both counsel, and that is the question of permission to use this car. Now, the law does not mean by that, that you must have permission in so many words and nothing else. There can be an implied permission." And further on he charged: "that question of permission is one for you to solve from the evidence you heard here but there may be an implied permission, as well as a direct permission and that is for you to decide."

If the plaintiffs did not deem that warning sufficiently explicit so as to inform the jury of the law which they should apply to the evidence, plaintiffs ought to have presented to the trial justice requests for such instructions as they deemed necessary for a right understanding by the jury of their duty in the premises, and if such requests were refused plaintiffs ought to have excepted to such refusal. This they did not do, nor did they except to any portion of the charge pertaining to this point. The charge under our practice thus became the law of the case and they are bound by it both as to its soundness and completeness. We are, therefore, of the opinion that there is no merit in plaintiffs' eighth exception, and it is overruled.

Plaintiffs' ninth exception is to the denial of their motions for new trials. First, they contend that the trial justice did

not properly perform his duty in deciding such motions, because he said in the course of his decision "that he should not substitute his own opinion upon the interpretation of the facts" for that of the jury. Assuming, without deciding, that plaintiffs' contention is correct and that, therefore, the trial justice's decision is not entitled to the weight which it would have with us if he had properly performed his duty, we are nevertheless of the opinion that he did not err in denying plaintiffs' motions. After carefully considering all the evidence, and particularly the testimony of McKenzie, we think that the jury was clearly justified in finding that he did not have either the express or implied permission of Carr to use his automobile.

McKenzie testified that DiLisa gave him the keys, but DiLisa denied this. Even if the jury believed McKenzie, the fact that DiLisa had given him the keys would not be sufficient to prove that he had the implied permission to move Carr's automobile. DiLisa was given the keys in the first place by Femino for one purpose, to enable him, Femino, to move his automobile out of the alley. That purpose being accomplished, and DiLisa having returned Carr's automobile to its place in the alley, DiLisa had no further implied permission from Carr to move the automobile or to authorize anyone else to move it under changed circumstances. The jury could, on all the evidence, reasonably find that such was the extent of the permission originally given by Carr to Femino, and that it was not to be further extended to persons unknown to Carr nor for a purpose other than to serve Femino in getting his automobile out of the alley.

The weak link in plaintiffs' cases is the testimony of McKenzie. Upon it plaintiffs must necessarily rely to sustain their burden of proof that Carr permitted McKenzie to use the automobile. We think that it is not strong enough for that purpose. We are, therefore, of the opinion that the jury's verdicts did substantial justice between the parties and that the trial justice did not err in approving them.

The plaintiff's exceptions in each case are overruled, and each case is remitted to the superior court with direction to enter judgment for the defendant.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for plaintiffs.

*Francis V. Reynolds,* for defendant.