Joseph **SKRZAT**

v.

**FORD MOTOR COMPANY and Menard Ford Sales, Inc.**

Civ. A. No. 74–212.

United States District Court,
D. Rhode Island.

Feb. 4, 1975.

---

67.  D.C.Code § 21–902(b) (1973).

———◆———

Joseph A. Kelly, Providence, R. I., for plaintiff.

Francis V. Reynolds, Paul V. Reynolds, Providence, R. I., for Ford Motor Company.

## OPINION

PETTINE, Chief Judge.

This action to recover damages for personal injuries sustained as a result of an automobile accident is before the Court on plaintiff's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion raises the question whether, under Rhode Island law,[1] the plaintiff may assert a plea of collateral estoppel by former judgment against the defendant when mutuality of estoppel is absent and when plaintiff was neither a party nor in privity with a party to the earlier litigation.

On November 11, 1970, the plaintiff and Gerald P. Turcotte were passengers in a 1970 Maverick.[2] The car was traveling on the Massachusetts Turnpike when it was "rear-ended" by another vehicle. A fire broke out, engulfing the Maverick in flames and burning the plaintiff and Turcotte.

As a result of his injuries, Turcotte died. In an action for wrongful death against Ford Motor Company, C.A. No. 73–1251, tried before this Court and a jury in 1973, defendant Ford Motor Company was found liable for the death of Turcotte because of a defect in the design of the Maverick's gas tank. On appeal the judgment was reversed and remanded on the issue of damages and affirmed on the issue of liability. Turcotte v. Ford Motor Co., 494 F.2d 173 (1st Cir. 1974).

This plaintiff, a passenger in the same vehicle who sustained injuries arising out of the same accident, argues that the decision in Turcotte v. Ford Motor Company should estop the defendant Ford from relitigating the issue of its liability for this accident.

■ Since the Supreme Court of Rhode Island has not definitively set down the standards for application of the doctrine of collateral estoppel,

> ". . . it is our duty, as we see it, to decide the case as we believe it would be decided by the highest court of [Rhode Island], taking into account not merely the generalizations and the dicta in cases from years past but also trends in modern legal thought which we think would be accepted by the Supreme Court of [Rhode Island] today." Graves v. Associated Transport Inc., 344 F.2d 894, 896 (4th Cir. 1965).

In Hill v. Bain, 15 R.I. 75, 76, 23 A. 44, (1885), the Supreme Court of Rhode Island considered application of the doctrine of collateral estoppel and stated:

> "Undoubtedly the rule, as generally laid down, is that judgments avail as estoppels only for or against parties and privies; but, nevertheless, the courts allow themselves a good deal of latitude in applying the rule, observing the spirit of it rather than the letter."

---

1. Jurisdiction is based solely on diversity of citizenship. Thus, the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) controls. The parties have argued this motion on the basis of Rhode Island law, and the Court is persuaded by the First Circuit's affirmance in Turcotte v. Ford Motor Co., 494 F.2d 173 (1st Cir. 1974) that Rhode Island law applies.

2. This Maverick was manufactured by defendant Ford Motor Company and sold by defendant Menard Ford Sales, Inc., of South Bellingham, Massachusetts.

Employing the "spirit" of the rule of collateral estoppel, the court allowed a plea of estoppel by a defendant who was neither a party nor in privity with a party in the earlier action by the same plaintiff because

> " . . . the defendants, though not parties to the judgments, were so connected in interest or liability with the parties that the judgments when recovered could be regarded as virtually recovered from them, for the purposes of estoppel, as well as by and for the parties of record." [3] *Id.* at 77, 23 A. 45.

Since the defendant in Hill v. Bain, *supra*, was neither a party to the former suit nor in privity with such party, the defendant would not have been bound had the earlier case been decided adverse to his interests. Thus, the estoppel was not mutual. See generally, 1B Moore, Federal Practice, Par. 0.412 [1] at 1801 (2nd ed. 1974); Bigelow v. Old Dominion

Mining & Smelting Co., 225 U.S. 111, 127, 32 S.Ct. 641, 56 L.Ed. 1009 (1912).

The *Hill* reasoning was recently followed in Harding v. Carr, 79 R.I. 32, 41, 83 A.2d 79, 83 (1951).[4] There the Supreme Court allowed the defendant to rely upon a judgment obtained by his insurer against the same plaintiff and upheld a defense of collateral estoppel. Once again, the defendant was not a party nor in "actual" privity with the insurer in the earlier action [5] and the estoppel was not mutual.

Subsequently, in Zuckerman v. Tatarian, 110 R.I. 190, 291 A.2d 421 (1972)[6] the Rhode Island Supreme Court was asked to rule on the question whether Harding v. Carr abrogated the requirements of mutuality and privity. In that case the defendant argued that *Harding* reversed the general principle of Brierly v. Union R. R., 26 R.I. 119, 120, 58 A. 451, 452 (1904), which held that privity was a necessary condition for a plea of

3. In Hill v. Bain, 15 R.I. 75, 23 A. 44 (1885), the plaintiff had a collision with certain teams and carts placed in the road by defendants Budlongs. Plaintiff sued the defendants for injuries sustained and after trial, the jury found the defendants not liable for the injuries. Judgment was entered for the defendants. Plaintiff then sued the town of Cranston to recover damages for his injuries on the theory that the town neglected to keep the public road safe and clear for travel. The defendant town pled the judgment of the Budlongs, defendants in the prior action, as a bar by estoppel as the Budlongs were the cause of the obstruction in question. *Id.* at 75–76, 23 A. at 44.

4. In Harding v. Carr, 79 R.I. 33, 83 A.2d 79 (1951), the plaintiffs were injured by an automobile owned by defendant, Carr, but driven at the time of the accident by one McKenzie. The plaintiffs first obtained judgment against McKenzie by default. By virtue of Carr's insurance policy which provided coverage to him and to any person using his automobile with his permission, satisfaction of the judgment was sought from the United States Fidelity & Guaranty Company pursuant to Rhode Island General Laws 1938, chapter 155. After a trial at which Carr was a witness for the defendant, his insurer, the jury returned a verdict for the defendant and a special finding that McKenzie did not have Carr's permission to op-

erate the automobile. The jury verdict was affirmed on appeal. Chase v. United States Fidelity & Guaranty Co., 73 R.I. 51, 53 A.2d 708 (1947).

When plaintiff then sought recovery from Carr, the owner of the automobile, Carr pled *res judicata* on the basis of the special finding in Chase v. United States Fidelity & Guaranty, *supra*, that McKenzie did not have his consent to drive the car.

5. In the majority opinion the court appears to apply a liberalized version of the doctrine of privity. See, Harding v. Carr, 79 R.I. 32, 40, 83 A.2d 79, 85 (1951). However, as the dissent pointed out "[t]he fact that two parties as litigants in two different actions happen to be interested in proving or disproving the same facts creates no privity between them. [citations omitted]." *Id.* at 49, 83 A.2d at 87.

6. In Zuckerman v. Tatarian, 110 R.I. 190, 291 A.2d 421 (1972), the plaintiff sought consequential damages for injury to his minor son, Louis, resulting from a collision between an automobile operated by Louis and one operated by the defendant's agent. The defendant argued that plaintiff's claim was dependent upon defendant's liability to Louis and that a prior judgment obtained in defendant's favor in Louis' direct action against defendant was a bar to the present action.

collateral estoppel. Zuckerman v. Tatarian, *supra,* 110 R.I. at 193–194, 291 A.2d at 424. Thus, although defendant was neither a party nor in privity with any party in the earlier litigation, it was argued he should be allowed to plead estoppel.

The Supreme Court held:

"It is our opinion, then, that little consequence attaches to whether *Harding* was intended to overrule *Brierly* in whole or in part. Predicated upon our analysis of the decision in *Harding,* we now hold that the doctrine of collateral estoppel should be applicable to bar a derivative suit when in a prior action on the claim from which the later claim derives a court of competent jurisdiction had made a determination of an ultimate and decisive issue and the court is satisfied that in the prior action the rights and interests of the parties sought to be bound by the estoppel in the subsequent litigation were substantially and properly protected."

Zuckerman v. Tatarian, *supra* 110 R.I. at 195–196, 291 A.2d at 425.

Thus, the court decided only the narrow issue of whether to allow collateral estoppel in a derivative action and not the broader question of whether *Harding* eliminated the requirement of mutuality and privity entirely.

It is important to note that the *Zuckerman* decision effectively overruled *Brierly* because in both *Brierly* and *Zuckerman* the claims were derivative. Moreover, the court in *Zuckerman* at no time limited the *Harding* decision to de-

rivative suits but merely relied on the *Harding.* rationale to reach its decision.

In *Harding* the Supreme Court stated:

"At any rate the true reason for this type of res adjudicata is said to be based not so much upon the existence of mutuality and privity in the strict sense as upon the policy of the law to end litigation in a proper case. Under that view a plaintiff who has sought and obtained in a court of competent jurisdiction a determination of an ultimate and decisive fact on the merits is not permitted to again present such fact for litigation in another action wherein the interest and liability of the parties are so necessarily connected and dependent as to require that they be treated virtually the same as the parties to the former action. In our judgment the justice of that reasoning would support the application of the principle in the circumstances of the instant case even if we were to assume that the actions under consideration are different."

Harding v. Carr, *supra,* 79 R.I. at 41, 83 A.2d at 83.

This alternative basis for decision, predicated upon the policy favoring an end to litigation rather than on the rules of mutuality and privity, is essentially identical to the analysis used in Bernhard v. Bank of America National Trust & Savings Assn., 19 Cal.2d 807, 122 P.2d 892 (1942), the leading case abrogating the doctrine of mutuality and privity.[7]

■ The doctrines of *res judicata* and collateral estoppel are judicial in ori-

---

7. Brainerd Currie states of Harding v. Carr, *supra:*

"Although *Bernhard* is not cited and other reasons are given, plea of collateral estoppel is sustained against party having initiative in prior action for essentially the reasons stated in *Bernhard* . . ." Currie, "Civil Procedure: The Tempest Brews", 53 Calif.L.Rev. 25, 45 (1965).

In *Bernhard* Justice Traynor speaking for a unanimous court stated:

"The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally de-

termined by a court of competent jurisdiction. Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent law suit on a different cause of action. [citations omitted.] . . . The rule is based on the sound public policy of limiting litigation by preventing a party who had had one fair trial on an issue from drawing it into controversy. . . . Bernhard v. Bank of America Nat'l Trust & Savings Assn., 19 Cal.2d 807, 810, 122 P.2d 892, 894 (1942).

gin, Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948), as is the requirement of mutuality of estoppel. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 320, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). When a conflict arises between the doctrine of mutuality and the policy behind *res judicata* and collateral estoppel against endless litigation, the modern trend of decisional law indicates that the requirements of sound public policy should prevail over the mechanical application of the requirements of mutuality and privity. Bernhard v. Bank of America Nat'l Trust & Savings Assn., *supra.* See also, B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 146–148, 278 N.Y.S.2d 596, 225 N.E.2d 195, 197–198 (1967) (the court characterizes the "doctrine of mutuality" as a "dead letter".); Bruszewski v. United States, 181 F.2d 419, 421–422 (3rd Cir. 1950) cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). See generally Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation, *supra,* 402 U.S. at 322 fn. 9, 91 S.Ct. 1434 and 326 fn. 14, 91 S.Ct. 1434 (collecting state cases); and at 325 fn. 13, 91 S.Ct. 1434 (collecting federal cases).

■ This Court is persuaded by the inherent wisdom in the modern trend abrogating the doctrines of mutuality and privity and that the Rhode Island courts share this view. I conclude that if faced with the question, the Supreme Court of Rhode Island would make more explicit the "liberalized" position already enunciated in Hill v. Bain, *supra,* 15 R.I. at 76, 23 A. at 45, and Harding v. Carr, *supra,* 79 R.I. at 41, 83 A.2d at 83, and eliminate in their entirety the mutuality and privity requirements.

■ In the absence of these requirements, the standard which should be applied to determine whether or not a plea of collateral estoppel should be allowed

was given by Justice Traynor in the form of three questions:

"Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party *against whom* the plea is asserted a party or in privity with a party to the prior adjudication?"

Bernhard v. Bank of America Nat'l Trust & Savings Assn., *supra,* 122 P.2d at 895 (emphasis added).

In considering the question of final judgment attention must also be focused on whether there has been a full and fair opportunity to litigate the issue which is said to be controlling, Schwartz v. Public Administrator of County of Bronx, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725, 729 (1969); Pettella v. Corp Brothers, Inc., 107 R.I. 599, 615, 268 A.2d 699, 707 (1970); Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation, *supra,* 402 U.S. at 329, 91 S.Ct. 1434.

■ An application of the above standard to the case at bar resolves the remaining question of whether plaintiff, Skrzat, can avail himself of Turcotte's judgment against the defendant, Ford Motor Company. In Turcotte v. Ford Motor Co., *supra,* 494 F.2d at 176–183, the First Circuit Court of Appeals affirmed the jury verdict against Ford Motor Company for a design defect in the gas tank of the 1970 Maverick which caused an unreasonable danger of fire. *Id.* at 182, fn. 12. The plaintiff, Skrzat, raises the same issue of liability based on the design defect. Thus, the issues raised by plaintiff's case and *Turcotte* are identical. See, Bernhard v. Bank of America Nat'l Trust & Savings Assn., *supra.* Moreover, the decision in *Turcotte* is final on the issue of liability, having been appealed and affirmed. Finally, the defendant, Ford Motor Company, against whom the plea is asserted,

was a party in the *Turcotte* case. Hence, all the preliminary requirements of the *Bernhard* standard are met.

The question remains whether Ford Motor Company had a full and fair opportunity to litigate the issue of liability in the *Turcotte* suit.

"A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

Schwartz v. Public Administrator of County of Bronx, *supra,* 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729.

This Court holds that Ford Motor Company has had its day in court. Ford had a full and complete opportunity to participate in the trial of the *Turcotte* case. This was not a case in which the earlier litigation was predicated on an insubstantial claim. *Cf.* Nevarov v. Caldwell, 161 Cal.App.2d 762, 327 P.2d 111 (1958); Berner v. British Commonwealth Pacific Airlines, Ltd., 346 F.2d 532 (2nd Cir.

1965) cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472. To the contrary, plaintiff *Turcotte* sought to recover for the wrongful death of the only passenger who died in the accident. Although the jury verdict of $500,000 was reversed on appeal, the case was ultimately settled in this court. Thus, no claim can be made that Ford's potential liability in *Turcotte* was anything less than substantial. The issue of liability was tried extensively before this Court by fully competent counsel. All questions and issues were thoroughly explored and litigated. There was no compromise on the issue of liability.

The defendant, Ford Motor Company, contends that collateral estoppel should not be applied in this case because it has new evidence to present. See, United States v. United Air Lines, 216 F.Supp. 709, 728 (E.D.Wash., D.Nev.1962), modified on other grounds sub nom. United Air Lines, Inc. v. Wiener, 335 F.2d 379, 404 (9th Cir. 1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964). Defendant offers no support for this allegation. In its memorandum the defendant Ford merely reargues the evidence heard by the jury in *Turcotte* and urges that this time its experts would be more convincing. However, the unavoidable fact is that a jury has already ruled on this issue against the defendant's experts.[8]

8. Shortly after the decision in Bernhard v. Bank of America Nat'l Trust & Savings Assn., *supra,* concern was voiced as to whether the doctrine of collateral estoppel should be available for "offensive" as well as "defensive" use. Professor Currie posited the oft cited hypothetical of a railroad accident in which 50 passengers are injured. The first 25 passengers in separate actions file suit against the railroad and lose. However, passenger No. 26 wins his actions. Professor Currie argued that an "offensive" use of the doctrine would produce the anomalous result that the remaining passengers could plead the judgment of passenger No. 26 without regard for the first 25 cases in which the railroad won. Currie, "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," 9 Stanford L.Rev. 281, 285–286 (1957). But in a subsequent article Professor Currie retracted many of his earlier reservations. Currie, "Civil Procedure:

The Tempest Brews," *supra,* fn. 7. See, Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944, 955–956 (2nd Cir. 1964). See also Graves v. Associated Transport, Inc., 344 F.2d 894, 900 (4th Cir. 1965).

It seems clear to this Court that the courts have demonstrated their willingness and ability to give careful and thorough consideration to the facts of each case, thereby avoiding anomalous and unjust results. It is clear in this case that no injustice will result from the "offensive" use of the doctrine here.

Indeed where a party not privy to the first action seeks to plead collateral estoppel, a mechanically applied limitation of the doctrine to "defensive" use is itself likely to produce anomalous and unjust results in cases where the fine line between "offensive and "defensive" uses is blurred.

We see no reason not to apply the doctrine of collateral estoppel to defendant Ford Motor Company in order to prevent it from relitigating the issue of liability. See, United States v. United Air Lines, Inc., *supra*, 216 F.Supp. at 725–732; Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944, 955–956 (2nd Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298; Maryland v. Capital Airlines, Inc., 267 F.Supp. 298, 303–304 (D.Md.1967); Desmond v. Kramer, 96 N.J.Super. 96, 232 A.2d 470, 475 (1967); Schwartz v. Public Administrator of County of Bronx, *supra*, 24 N.Y.2d at 73–74, 298 N.Y.S.2d 955, 246 N.E.2d at 730–731; B. R. DeWitt Inc. v. Hall, *supra*, 19 N.Y. 2d at 148, 278 N.Y.S.2d 596, 225 N.E.2d at 199; *Cf.*, Rachal v. Hill, 435 F.2d 59 (5th Cir. 1970) cert. denied, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971).

Therefore, plaintiff's motion for summary judgment is allowed as to defendant Ford Motor Company on the issue of liability.

The plaintiff's motion for summary judgment is directed also to the defendant Menard Ford Sales, Inc. Defendant Ford Motor Company raises the issue that defendant Menard Ford Sales, Inc. should not be bound by the *Turcotte* decision because it was not a party in that case. However, I have received only the memorandum of the defendant Ford Motor Company in opposition. Therefore, it is hereby ordered that defendant Menard Ford Sales, Inc. file, within 10 days of entry of this opinion, a memorandum delineating the reasons why the decision in *Turcotte* should not bind it on the issue of liability. The plaintiff may file a reply memorandum within 1 week of that filed by defendant Menard Ford Sales, Inc.

Enter order accordingly.