James S. GERRARD, Appellee,

v.

William G. LARSEN, Special Administrator of the Estate of Jack K. Gibbens, Deceased, Appellant.

No. 74–1623.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1975.

Decided May 27, 1975.

Evan F. Heustis, Devils Lake, N. D., for appellant.

Neil Thompson, Devils Lake, N. D., for appellee.

Before BRIGHT, STEPHENSON, and WEBSTER, Circuit Judges.

BRIGHT, Circuit Judge.

The appellant, William G. Larsen, special administrator of the estate of Jack K. Gibbens, appeals from, *inter alia*, a summary judgment of dismissal of a wrongful death claim against the appellee, James S. Gerrard, the driver of an automobile which collided with the automobile driven by the deceased, Jack K. Gibbens. The district court granted the dismissal on the ground that the administrator was collaterally estopped by a judgment in a prior action for contribution by Gerrard against Gibbens' estate in which a jury determined that Gibbens' negligence had contributed to the accident. We hold that estoppel has not been established on the record presented and we reverse and remand for further proceedings.

The accident in question occurred on September 4, 1971, at 2:00 a. m., on U.S. Highway # 281 a few miles north of Cando, North Dakota. Jack Gibbens, then 19 years of age, and another youth by the name of Dennis Elsperger, a passenger in the vehicle driven by Gibbens, were proceeding in a southerly direction on the highway. James S. Gerrard, driving in a northerly direction, collided head-on with Gibbens' vehicle. Elsperger sustained personal injuries; Gibbens died as a result of the accident. The evidence adduced at trial indicated that both drivers had been drinking prior to the accident and that both vehicles had traveled at a high rate of speed immediately prior to the accident. Law enforcement officers, however, placed the accident as occurring within the lane of traffic properly occupied by Gibbens' automobile. An alcohol-blood test taken after the accident disclosed an alcohol level of .11 percent in Gibbens' blood. Under North Dakota law a reading of .10 percent or more raises a presumption of intoxication. N.D.Cent.Code § 39–20–07(3) (1972). In an effort to rebut this presumption the special administrator introduced evidence indicating that Gibbens was sober.

Federal court action to recover for injuries and medical expenses was initiated by Elsperger and his mother, Lois, residents of the State of Arizona. They brought the action for damages against only Gerrard, who had previously pled guilty in state court to a charge of aggravated reckless driving arising out of this accident. The Elspergers contended

that Gerrard's negligence had caused the accident and consequent injuries to Dennis. Following filing and service of the Elspergers' complaint, Gerrard brought his third-party action for contribution against William G. Larsen as special administrator of the estate of the deceased Gibbens, alleging that Gibbens' negligence had caused or contributed to the accident. The administrator filed an answer denying liability and, in addition, brought a counterclaim against Gerrard seeking to recover both damages for Gibbens' pain and suffering prior to his death and, for the benefit of Gibbens' parents, James and Helma Gibbens, the sum of $100,000, plus funeral expenses of $1,811. Larsen brought this latter claim under the provisions of North Dakota's wrongful death statute. N.D.Cent.Code §§ 32–21–01 to –06 (1960).

The trial commenced on June 4, 1974. On that date, the district court severed the counterclaim from the trial of the main action [1] on motion of the administrator. After hearing evidence in the main action and in the contribution claim by Gerrard against Larsen, the jury returned a verdict in favor of the plaintiffs, Dennis and Lois Elsperger, in the sum of $25,000, and the jury also determined that Gerrard was entitled to contribution from administrator-Larsen. Thereafter, on July 16, 1974, the trial court, on motion of Gerrard, dismissed the counterclaim and this appeal followed.

The appellant-special administrator Larsen raises two issues on this appeal: (1) Did the trial court err by denying his motion for judgment n. o. v. or for a new trial in the main action on the ground that there was no substantial evidence of Gibbens' negligence? (2) Did the trial court err in granting a summary judgment dismissing the counterclaim against appellee-Gerrard?

### I. Sufficiency of the Evidence.

We reject the appellant's first contention. The jury was entitled to find under the evidence that Gibbens' conduct—driving at a high rate of speed while presumably under the influence of alcohol—constituted negligence, contributing in some degree to the accident. The trial court properly presented this issue to the jury.

### II. Collateral Estoppel.

Appellant bases his contention that the trial court erroneously dismissed the wrongful death action upon his differing fiduciary capacities in the main action and counterclaim. In defending against Gerrard's complaint in the main action, Larsen represented only the decedent's estate. In the counterclaim for wrongful death, Larsen represents the decedent's parents. The counterclaim asserts two separate claims: (1) damages for the decedent's pain and suffering prior to death; and (2) damages for loss sustained by the parents from the death of Jack Gibbens.

North Dakota law authorizes an action for wrongful death by the following persons in the following order:

(1) The surviving husband or wife, if any;
(2) The surviving children, if any;
(3) The surviving mother or father;
(4) The personal representative.

[N.D.Cent.Code § 32–21–03.]

Such an action may be maintained if the defendant would have been liable to the decedent if death had not ensued. N.D. Cent.Code § 32–21–01. In this case, according to the district court opinion, the contributory negligence of the decedent bars recovery by the parents in the wrongful death action. The appellant contends, however, that the administrator, who served as representative of the estate in the main action, serves in the counterclaim for wrongful death only as

---

1. According to the appellant's brief, James Gibbens, the surviving father of the deceased Jack Gibbens, fell and broke his leg just prior to trial. The existence of the injury served as the basis for the motion to sever the counterclaim.

a representative of the parents and that, consequently, the judgment against him in his capacity as administrator for the estate does not bar him from proceeding in a different capacity on the counterclaim.

■ The court properly dismissed the estate's claim for damages suffered by Jack Gibbens, for the parties to this claim and the prior action are identical. The estate is bound by the prior finding that the decedent was guilty of negligence contributing to the accident and that issue is not subject to relitigation by the estate. *See Restatement of Judgments* § 68(1) (1942); *see also Cromwell v. County of Sac,* 94 U.S. 351, 353–54, 24 L.Ed. 195 (1876); *see generally* 1B J. Moore, *Federal Practice* ¶¶ 0.441[1]–[3] (2d ed. 1974).

In dismissing the counterclaim, including the claim for wrongful death, the district court reasoned as follows:

The Defendant-Third Party Plaintiff relies on *Armstrong v. Miller,* 200 N.W.2d 282 (N.D.1972), contending the four tests [for collateral estoppel] enunciated in that case have been met.

"(1) Was the issue which was decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"

Third Party Defendant takes the position that the third test has not been met, contending that William G. Larsen, in defending the estate against the claim for contribution and in representing the heirs on the counterclaim, was representing different parties and that when the trial of the counterclaim was severed privity was destroyed. Third Party Defendant's

argument is rejected. While Larsen may be representing different parties, obviously privity must have been present initially to give Larsen standing to assert the counterclaim. Larsen has failed to explain to the satisfaction of this Court how the severance of the trial of the counterclaim destroyed that privity. [Order of July 16, 1974, Civ. No. 4784 at 2.]

To determine whether Larsen is barred from maintaining the wrongful death action by the earlier finding of negligence on the part of Gibbens, we must focus on whether Larsen, in presenting the wrongful death claim, can be said to be a party to the earlier third party action or in privity, or its equivalent, with his status as special administrator in defending against that action. Both counsel cite *Armstrong v. Miller,* 200 N.W.2d 282 (N.D.1972), to support their arguments, but the decision in *Armstrong* is not dispositive of this question.

■ For background, we relate the facts and holdings in *Armstrong v. Miller.* In that case Mrs. Armstrong sustained injuries and her husband was killed in a three-vehicle accident involving the Armstrong car, a truck driven by one Miller, and a second car driven by one Mickelson. In a prior action she had sued, as a representative of her husband's heirs, Mickelson and Miller for damages for the wrongful death of her husband and had recovered against both defendants. Subsequently, she brought an action against these same defendants for her own personal injuries and sought to use the judgment in the prior action to preclude (or collaterally estop) the defendants from relitigating the liability issues in the case. The trial court approved this use of the prior judgment, but the Supreme Court of North Dakota reversed, rejecting her attempt to apply the doctrine of collateral estoppel offensively.[2] The court reasoned as follows:

---

2. Collateral estoppel may be asserted defensively or offensively. A defendant raising as a defense a prior judicial determination of an issue in order to bar a plaintiff or counter-

claimant who is bound by the judgment in the prior suit from litigating that issue may be said to be invoking estoppel defensively. *See, e. g., Blonder-Tongue Laboratories, Inc. v. Uni-*

Adhering to the mutuality rule, Mrs. Armstrong, not being in privity in the first action, is neither bound by nor may she claim the benefits of the former adjudication of liability in the prior judgment. [200 N.W.2d at 288.]

In *Armstrong v. Miller* a nonparty to the prior action, Mrs. Armstrong as an individual, sought but was denied the right to invoke the collateral estoppel doctrine against parties to the prior action. Here, to the contrary, a party to the prior action, Gerrard, seeks to invoke the doctrine defensively against the wrongful death claim asserted by the administrator, Larsen. Although Larsen was a party in the prior litigation as administrator of Gibbens' estate and is a party in the wrongful death action as the representative of Gibbens' parents, the application of the collateral estoppel doctrine rests upon the status and financial interests of the beneficiaries and not upon the identity of the fiduciary in the two actions. *Campbell v. Ashler,* 320 Mass. 475, 70 N.E.2d 302, 305 (1946); *Armstrong v. Miller, supra,* 200 N.W.2d at 285–88; *Restatement of Judgments* § 80(3); *see also Deep Rock Oil Corp. v. Sheridan,* 173 F.2d 186, 191 (10th Cir. 1949); *see generally* 1B J. Moore, *Federal Practice* ¶ 0.411[3] at 1435–47.

Thus, in applying the doctrine of collateral estoppel, we disregard Larsen's formal status and look to the interests he represents. In the contribution action, Larsen as special administrator was sued in his capacity as the representative of the estate, presumably for the benefit of Gerrard as a creditor seeking third party contribution against the estate for the decedent's negligent driving which contributed to cause injuries to Dennis Elsperger.[3] *See Campbell v. Ashler, supra,* 70 N.E.2d at 305.

In the present proceedings, Larsen represents a different interest. He represents the parents of the deceased driver, James and Helma Gibbens, in the prosecution of a wrongful death action for their benefit, not the benefit of the estate. The record does not show that James and Helma Gibbens personally participated in the contribution action in any way. They appear in the counterclaim as strangers to the initial contribution action unless they acted in privity with the decedent's estate.

Thus, we must inquire whether collateral estoppel may be asserted by a party to a prior action, Gerrard, against these parents, as nonparties. That inquiry requires us, in turn, to consider first a choice of law problem. Do we apply state or federal law in determining the preclusive effect of the prior adjudication of negligence?

A. Choice of Law.

Authorities differ over whether federal courts should apply state or federal law in determining the collateral estoppel effect of an issue decided in a prior federal diversity case. Some courts interpret *Erie RR. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to require the application of state law. *See*

---

versity of Illinois Foundation, 402 U.S. 313, 329–30, 349–50, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Cauefield v. Fidelity & Casualty Co.,* 378 F.2d 876 (5th Cir.), cert. denied, 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967). A plaintiff or counterclaimant seeking to preclude a defendant from litigating an issue which has already been judicially decided favorably to the plaintiff or counterclaimant in a suit the judgment of which binds the defendant may be said to be invoking estoppel offensively. *See, e. g., Zdanok v. Glidden Co.,* 327 F.2d 944, 955–56 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Skrzat v. Ford Motor Co.,* 389 F.Supp. 753, 757–58 (D.R.I.1975). *See generally* 1B J.

Moore, *Federal Practice* ¶ 0.412[1] at 1807 (2d ed. 1974); Note, *Collateral Estoppel of Nonparties,* 87 Harv.L.Rev. 1485, 1491 n.39 (1974); *Annot.,* 31 A.L.R.3d 1044, 1072–77 (1970).

3. The file does not reflect whether the estate of Jack Gibbens responded to the contribution judgment out of the decedent's personal assets or whether the appointment of a special administrator was necessary as a predicate to recover the judgment against an automobile liability insurance carrier covering the automobile driven by the deceased. *See* N.D.Cent. Code § 30–09–01 (1960), which provides for the appointment of a special administrator.

*Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co.,* 411 F.2d 88, 94 (3d Cir. 1969); *Maryland v. Capital Airlines, Inc.,* 267 F.Supp. 298, 302 (D.Md.1967); *see also Seguros Tepeyac, S.A. v. Jernigan,* 410 F.2d 718, 727 (5th Cir. 1969); *Skrzat v. Ford Motor Co.,* 389 F.Supp. 753, 754 n.1 (D.R.I.1975). On the other hand, there is authority to the effect that avoidance of needless relitigation of issues by federal courts with already overcrowded dockets is a concern of paramount federal importance calling for the application of federal law. *See In re Air Crash Disaster near Dayton, Ohio,* 350 F.Supp. 757, 761–62, 764 (S.D. Ohio 1972), rev'd on other grounds sub nom. *Humphreys v. Tann,* 487 F.2d 666 (6th Cir. 1973), cert. denied, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974); *cf. Aerojet-General Corp. v. Askew,* 511 F.2d 710, 715–18 (5th Cir. 1975) (res judicata); *Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir. 1962) (res judicata); *United States v. United Air Lines, Inc.,* 216 F.Supp. 709, 720–25 (D.Nev.1962), aff'd sub nom. *United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (9th Cir.), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964) (federal law governs finality of judgment for res judicata purposes); Vestal, *Res Judicata/Preclusion by Judgment: The Law Applied in Federal Courts,* 66 Mich.L.Rev. 1733, 1746 (1968).

We deem it unnecessary to resolve this conflict. Although North Dakota's highest court has applied, in *Armstrong v. Miller, supra,* 200 N.W.2d at 285–88, the strict mutuality rule when collateral estoppel has been invoked offensively—*i. e.,* when a stranger to the judgment, the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action—the North Dakota courts have not yet spoken on the use of collateral estoppel defensively as presented by the instant case.

North Dakota's rejection of the offensive use of collateral estoppel by a nonparty accords with the view of a number of courts which reject such offensive use while permitting defensive use of estoppel. *See* Note, *Collateral Estoppel of Nonparties,* 87 Harv.L.Rev. 1485, 1491 n.39 (1974); *Annot.,* 31 A.L.R.3d 1044, 1072–77 (1970). In light of the general erosion of the rule of strict mutuality, *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 320–30, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892, 894–95 (1942); *Annot.,* 31 A.L.R.3d at 1067–78, we do not believe that North Dakota's refusal to apply collateral estoppel offensively should be taken to mean that it will cling to all aspects of an outmoded and restrictive rule of strict mutuality as a precondition for the defensive use of collateral estoppel.

■ Even if we were to assume that state law applies here, we are not limited in our view of North Dakota law by any binding precedent. Thus, in determining state law, we may be guided by decisions in other cases which provide "the most just and reasoned analysis." *Passwaters v. General Motors Corp.,* 454 F.2d 1270, 1278 (8th Cir. 1972) (footnote omitted); *see generally* 1 W. Barron & A. Holtzoff, *Federal Practice and Procedure* § 8 at 40 n.6.5 (Wright ed. 1961); 1A:2 J. Moore, *Federal Practice* ¶ 0.309[2]. Hence, we apply what we view as the optimal rule of collateral estoppel under the circumstances of this case. We would do the same, and would therefore reach the same result, *see Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532, 540–41 (2d Cir. 1965), cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966), even if we were to conclude that federal law controls the collateral estoppel effect of the prior determination of Gibbens' negligence.

**B. Assertion of Collateral Estoppel Against a Nonparty.**

■ Ordinarily, res judicata or collateral estoppel may not be asserted, either

offensively or defensively, against a non-party. In *Bernhard v. Bank of America, supra,* acknowledged by courts and commentators as a leading case in abandoning the requirement of mutuality in the defensive use of res judicata, the court so stated:

> The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. * * He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. * * * There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation. [122 P.2d at 894 (citations omitted).]

In *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* a unanimous Supreme Court rejected mutuality as a precondition to the defensive assertion of collateral estoppel against a patentee in an action by the patentee to enforce a patent which had already been held invalid in a previous action by it against a different defendant. Notwithstanding its rejection of mutuality when a defendant asserts estoppel against a party to the prior action, the Court stated that collateral estoppel may not be invoked against a person who, unlike the plaintiff in *Blonder-Tongue,* was not a party to the prior litigation:

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the

identical issue which stand squarely against their position. *See Hansberry v. Lee,* 311 U.S. 32, 40 [61 S.Ct. 115, 85 L.Ed. 22] (1940); *Bernhard,* 19 Cal.2d, at 811, 122 P.2d at 894. [402 U.S. at 329, 91 S.Ct. at 1443.]

*See also Humphreys v. Tann,* 487 F.2d 666, 671 (6th Cir. 1973), cert. denied, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974); *Molino v. County of Putnam,* 29 N.Y.2d 44, 323 N.Y.S.2d 817, 272 N.E.2d 323 (1971).

Thus, we conclude that no estoppel may be asserted here against the decedent's parents on the wrongful death claim unless they can be said to have been a party to or in privity with Larsen in his defense of the contribution claim for the estate or unless they are otherwise bound by the judgment. As we have already shown, they were not parties to that action. It remains to be seen whether they were in privity with Larsen or are otherwise bound by the judgment in the contribution action.

1. Privity.

■ The *Restatement of Judgments* defines privity as expressing the idea

> that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The word "privy" includes those who control an action although not parties to it * * *; those whose interests are represented by a party to the action * * *; [and] successors in interest to those having derivative claims * * *. [*Id.* § 83, comment a.][4]

In *Bruszewski v. United States,* 181 F.2d 419 (3d Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), Judge Goodrich noted that

---

**4.** The *Restatement of Judgments* recognizes that beneficiaries under a wrongful death statute are in privity with the decedent and bound by an adjudication for or against their decedent where the decedent obtains a judgment during his or her lifetime in a cause of action based on the act causing death. *Id.* § 92(1); *see also Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593–94, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). That rule has no application here, however, for Jack Gibbens brought no suit in his own right.

[p]rivity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata. [*Id.* at 423 (concurring opinion).]

See also *Bernhard v. Bank of America, supra,* 122 P.2d at 894–95; 1B J. Moore, *Federal Practice* ¶ 0.411[1].

The North Dakota Supreme Court has spoken of identity of parties and privity in these terms:

[I]t has been said that only parties to the former judgment or their privies may take advantage of or be bound by it; that a "party" in this connection is one who is directly interested in the subject matter and has a right to make defense, or to control the proceeding, and to appeal from the judgment; and that a "privy" is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase. [*Armstrong v. Miller, supra,* 200 N.W.2d at 287, quoting *Annot.,* 31 A.L. R.3d at 1061.]

The record in this case offers no basis for concluding that the parents are in privity with the estate under the traditional concepts of privity outlined above.

2. Fair and Adequate Participation in the Prior Adjudication (Functional Privity).

The case law suggests a loosening of the traditional and sometimes artificial limitations on the application of res judicata and collateral estoppel doctrines. The abandonment of the mutuality doctrine in many jurisdictions, see *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. at 320–30, 91 S.Ct. 1434; *see generally* 1B J. Moore, *Federal Practice* ¶ 0.412[1] at 1805–09, as well as the relaxation of strict concepts of privity, *see* Note, *Collateral Estoppel of Nonparties,* 87 Harv. L.Rev. at 1494 n.66, are examples of this liberalized view toward res judicata and collateral estoppel.

In this era of overcrowded dockets the courts have a positive duty to restrict needless relitigation of issues. As Justice White has noted, "[t]he broader question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue." *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. at 328, 91 S.Ct. at 1442. Consequently, although Gibbens' parents are not, in the traditional sense, in privity with a party to the earlier litigation, our inquiry into the effect of that litigation on their present cause of action is not at an end. We must next ask whether the parents in fact participated fairly and adequately in that litigation, through the administrator.

In a few cases, collateral estoppel has been applied against a nonparty to a judgment, such as Gibbens' parents, on principles analogous to privity. *See Cauefield v. Fidelity & Casualty Co.,* 378 F.2d 876 (5th Cir.), cert. denied, 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967); *Friedenthal v. Williams,* 271 F.Supp. 524 (E.D.La.1967), aff'd per curiam, 395 F.2d 202 (5th Cir. 1968); *Nemeth v. Aluminum Cooking Utensil Co.,* 146 Cal.App.2d 405, 304 P.2d 129 (1956); *Ramos v. Horton,* 456 S.W.2d 565 (Tex.Civ.App.1970); *see also In re Air Crash Disaster near Dayton, Ohio,* 350 F.Supp. 757, 766–67 (S.D. Ohio 1972), rev'd sub nom. *Humphreys v. Tann,* 487 F.2d 666 (6th Cir. 1973), cert. denied, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974). In each of these cases, a family or other close relationship, for the purposes of the lawsuit, existed between the unsuccessful plaintiff in the first action and the plaintiff in the later action against the same defendant and permitted that defendant to raise successfully the estoppel defense in the second action. *See generally* Note, *Collateral Estoppel of Nonparties,* 87 Harv.L.Rev. at 1486–96. The courts in these cases approved estoppel because the person precluded had participated in

or controlled the prior fair and adequate litigation of the issue sought to be relitigated.

■■ In light of the changing application of the concepts of res judicata and collateral estoppel, the question of who should be bound by a prior adjudication ought to be resolved on a case by case basis by an examination of underlying facts and circumstances rather than by reliance solely upon the formal status of persons against whom an estoppel is asserted. *See* 1B J. Moore, *Federal Practice* ¶ 0.411[3] at 1435–47. Where the doctrine of mutuality has been eroded or abandoned in collateral estoppel cases, the courts employ as a criterion for the application of estoppel whether the party against whom the plea is asserted had been given a fair opportunity to be heard on the issue. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. at 329, 91 S.Ct. 1434; *Zdanok v. Glidden Co.,* 327 F.2d 944, 954–56 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Skrzat v. Ford Motor Co.,* 389 F.Supp. 753, 757–58 (D.R.I. 1975); *Teitelbaum Furs, Inc. v. Dominion Insurance Co.,* 58 Cal.2d 601, 606–07, 25 Cal.Rptr. 559, 561, 375 P.2d 439, 441 (1962), cert. denied, 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 130 (1963). This is also an appropriate criterion for determining whether Gibbens' parents are functionally in privity with Larsen's representative capacity in the prior action and therefore bound by the judgment in that action. We thus must inquire whether Gibbens' parents personally participated fairly and adequately in the prior action through Larsen as administrator of the estate. *See Cauefield v. Fidelity & Casualty Co., supra,* 378 F.2d at 877–79; *Ramos v. Horton, supra,* 456 S.W.2d at 568.

To determine whether Gibbens' parents fairly and adequately participated in the prior litigation necessitates a review of the facts surrounding their involvement, if any, in the litigation. For example, it must be inquired whether the parents exercised any control over Larsen or had any right to do so. The record shows that the same attorney represented both the estate in the first action and Mr. and Mrs. Gibbens in their wrongful death claim. The record does not show, however, whether the Gibbens selected this attorney for the estate or whether a liability insurer made the selection and the attorney undertook secondarily to plead the wrongful death case. Additionally, the record fails to show whether the severance of the wrongful death case served in fact to remove the Gibbens from meaningful participation in the first case. The record does not disclose whether the parents, as heirs of the decedent, possessed a financial interest in any estate of their son which was or would likely be affected by the contribution claim so that the special administrator would be considered as representing their financial interest in the first trial.

We conclude that the record is so incomplete as to prevent us from determining whether the litigation relationship, if any existed, between the parents and Larsen, as administrator of the estate, should preclude the parents from bringing the wrongful death action. That issue cannot be resolved on the record presented on this appeal. The trial court's assumption that privity existed because special administrator-Larsen defended the contribution action and also brought the wrongful death claim for the parents is without legal support.

The district court should decide, based upon all of the facts and circumstances, whether Gibbens' parents are bound by the prior adjudication. Thus, we remand the case to the district court to determine whether the parents fairly and adequately participated in the first lawsuit. If they did, they should be considered bound by the adjudication of negligence in that action. If not, they should be given their day in court.

■ We reverse and remand this case for further proceedings consistent with this opinion.[5]

5. We decline to award any costs in this appeal. The parties have not adequately briefed the crucial aspects of the estoppel issue as presented by this appeal.